UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LLOYD R. BRETTHAUER et al.,

    Defendants.

3:06-CV-00609-LRH-VPC

<u>ORDER</u>

This an action by the United States to foreclose on properties purchased by Defendant Bretthauer. The United States is asking this court to reduce to judgment civil tax assessments against Bretthauer and to order a judicial sale on two properties formerly owned by Bretthauer's wholly owned corporation. Because the United States has demonstrated that its tax liens validly attached to the properties while the properties' deeds were recorded as belonging to Bretthauer's wholly owned corporation, the court will grant summary judgment in favor of the United States.

**I.    Facts and Procedural History**

Because the United States is moving for summary judgment, the court must view the evidence in the light most favorable to Bretthauer. *See, e.g., SEC v. Talbot*, 530 F.3d 1085, 1090 (9th Cir. 2008)

Defendant Bretthauer purchased the two properties that form the basis for this lawsuit in 1992. The first property is located at 328 Seminole Way in Zephyr Cove, Nevada ("Seminole

Property"). The second property is located at 7248 Blue Falls Circle ("Blue Falls Property") in Reno, Nevada. Bretthauer purchased each of these properties using a loan with no money down.

After Bretthauer purchased the properties, on October 2, 1992, World Financial Services, Inc. ("WFS") was incorporated in Nevada. Bretthauer was the sole shareholder of WFS. Judith Stadtler and Diane Watson, Bretthauer's "on and off" girlfriend, were WFS's officers. WFS conducted meetings, issued stock, made resolutions, had a bank account, and had bylaws. However, WFS did not have an office or employees, and it did not pay any dividends.

On October 8, 1992, Bretthauer transferred the properties to WFS by "grant, bargain, sale" deeds. The deeds were recorded on October 9, 1992, and October 13, 1992. WFS assumed all the existing debt associated with the properties. At the time of the properties' transfer, Bretthauer believed the values of the properties did not exceed the debts owed on them. Following the conveyances, WFS paid all the loans and expenses associated with the properties. However, Bretthauer's name remained on the loans and insurance policies associated with the properties. Bretthauer continued to live on the Seminole Property after transferring it to WFS and paid the property's mortgage with the help of his roommates.

Around 1995, the real estate market took a downturn. At that time, neither WFS nor Bretthauer were able to continue making payments on the properties' mortgages. WFS therefore agreed to sell the properties to Agasi and Sernush Michitarian ("the Michitarians"), Diane Watson's parents, on December 1, 1995. The conveyances were not recorded until May 19 and 23, 2006, in order to avoid a due-on-sale provision contained in the properties' loans. WFS became defunct in 1997.

In January 1999, the Michitarians conveyed the properties to their daughter, Diane Watson. However, the deeds transferring the properties were not recorded until May 19 and 23, 2006, again, to avoid the due-on-sale provisions.

On September 11, 2006, Seminole Blue Falls, Inc. ("SBF") was incorporated in Nevada.

Watson is the sole shareholder of SBF as well as its president, secretary, and treasurer. On September 12, 2006, Watson conveyed the properties to SBF. Watson recorded these conveyances on September 18, 2006.

Defendant Bretthauer did not file individual income tax returns for the years 1988-1993 until 1995. After being contacted by the IRS, Bretthauer eventually filed individual tax returns for the years 1987 through 1992. The IRS also received an individual income tax return for 1993; however, this return was not signed by Bretthauer. In 1995, Bretthauer filed returns for his 1989-1992 federal employer's tax and unemployment taxes.

On June 20, 1997, and July 21, 1997, the United States recorded Notices of Federal Tax Liens ("NFTLs") against the Blue Falls property. On June 11, 1997, and July 22, 1997, the United States filed NFTLs against the Seminole Property. On March 10, 2006, the United States recorded NFTLs naming WFS as the nominee/alter ego of Bretthauer.

On November 13, 2006, the Government initiated the present lawsuit pursuant to 26 U.S.C. §§ 7401 and 7403 with the objective of foreclosing on the tax liens levied against Bretthauer's properties. After discovery, the United States filed the present motion for summary judgment (#49[1]), asking this court to reduce its tax assessments against Bretthauer to judgment and initiate foreclosure proceedings against the two properties. The United States has also filed a motion asking this court to strike affidavits attached to Bretthauer's opposition (#68).

## II. Legal Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together

---

[1] Refers to the court's docket

1    with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable
2    to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
3    587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

4    The moving party bears the burden of informing the court of the basis for its motion, along
5    with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*,
6    477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party
7    must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could
8    find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.
9    1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

10   In order to successfully rebut a motion for summary judgment, the nonmoving party must
11   point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v.
12   Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might
13   affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
14   242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary
15   judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute
16   regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could
17   return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a
18   scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine
19   dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at
20   252.

21   **III.   Discussion**

22   **A. Accuracy of Assessments**

23   The United States bears the initial burden of proof in an action to collect taxes. *Palmer v.
24   IRS*, 116 F.3d 1309, 1312 (9th Cir. 1997). The United States' burden can be met by the
25   presentation of federal tax assessments so long as they are supported by a minimal factual
26

4

foundation. *Id.* at 1312; *United States v. Cowan*, 535 F. Supp. 2d 1135, 1143 (D. Haw. 2008). A showing by the taxpayer that a determination is arbitrary, excessive, or without foundation shifts the burden of proof back to the IRS. *Palmer*, 116 F.3d at 1312.

The United States has met its initial burden by presenting its assessments against Bretthauer through its Certificate of Assessments, Payments, and Other Specified Matters. Defendant's only contention in rebuttal is that several of the assessments from 1989 to 1992 are outside of the applicable ten-year statute of limitations.

With regard to the assessments for the 1989 taxes listed in the amended complaint, the court agrees with the United States that its demand does not encompass any assessments outside of the ten-year statute of limitations. This action was filed on November 13, 2006; therefore, all assessments made after November 13, 1996, are within the statute of limitations. As an initial matter, the 1989 Certificate of Assessments and Payments ((#49) Ex. JJ at 1) shows that Bretthauer was credited the $485.00, $293.86, and $10.28 amounts after payment; thus, these assessments are not part of the United States' current demand. Moreover, the United States is correct that the assessments for the 1989 taxes that Bretthauer claims were made on November 6, 1995, were in fact made on June 6, 1997, as reflected in the Certificate of Assessment and Payments. *See United States v. Miller*, 318 F.2d 637, 639 (7th Cir. 1963) (accepting an assessment date on the "Certificate of Assessments and Payments" as proof of when an assessment was made).

Finally, concerning the other disputed assessments, the United States concedes that they are time barred and has reduced its demand accordingly. Therefore, the following assessments are supported by a substantial factual foundation: (1) $1,251,883.44 as of February 27, 2008, for Bretthauer's federal income tax liabilities; (2) $295,272.75 as of February 27, 2008, for Bretthauer's federal employment tax liabilities; and (3) $47,625.35 as of February 27, 2008, for Bretthauer's federal unemployment tax liabilities.

///

### B. WFS's Status as the Nominee/Alter Ego of Bretthauer

The court must next determine whether WFS was in fact the nominee/alter ego of Bretthauer so that a lien could be properly levied against that entity to recover Bretthauer's tax debt.

This court must apply Nevada law to determine whether WFS was an alter ego of Bretthauer. *See Towe Antique Ford Found. v. IRS*, 999 F.2d 1387, 1391 (9th Cir. 1993). The United States has the burden of showing that there is no genuine issue of fact regarding whether WFS is the alter ego of Bretthauer. *See United States v. Bell*, 27 F. Supp. 2d 1191, 1194-95 (E.D. Cal. 1998). The Nevada Supreme Court requires a showing of the following elements before a court may find a corporation is an individual's alter ego:

> (1) the corporation must be influenced and governed by the person asserted to be the alter ego; (2) there must be such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction [a] fraud or promote injustice.

*LFC Mktg. Group, Inc. v. Loomis*, 8 P.3d 841, 846-47 (Nev. 2000). The following factors, though not conclusive, may also indicate the existence of an alter ego relationship: "(1) commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities." *Id.* at 847. The Nevada Supreme Court has emphasized, however, that "[t]here is no litmus test for determining when the corporate fiction should be disregarded; the result depends on the circumstances of each case." *Id.*

With regard to the first element–whether WFS was influenced and governed by Bretthauer–while Bretthauer presented evidence that Judith Stadtler and Diane Watson were corporate officers, Bretthauer was unable to identify any duty that these individuals performed beyond Stadtler's voting on resolutions (Bretthauer Dep. (#67) Ex. N at 77:4-25, 85:1-87:9) and Watson's involvement in selling properties (*id.* at 63:15-21). Indeed, WFS's sole purpose was to hold title to the properties and pay their expenses. (*Id.* 82:21-83:1, 148:17-149:22.) Second, there

6

1  was unity of interest such that WFS was inseparable from Bretthauer, as he was its sole
2  shareholder. (*Id.* at 74:2-12.) Finally, adherence to the corporate fiction of a separate entity would
3  promote injustice if Bretthauer were able to transfer his property to WFS and thereby deprive the
4  United States of its tax assessments. *See, e.g., Towe Antique Ford Found. v. IRS*, 999 F.2d 1387,
5  1391 (9th Cir. 1993) ("Courts have not hesitated to ignore the fiction of separateness and approve a
6  piercing of the corporate veil when the corporate device frustrates clear intendment of the law. The
7  Government's inability otherwise to satisfy legitimate tax debts clearly may form a sound basis for
8  such disregard of corporate form.")

9        The five factors identified by the Nevada Supreme Court as indicative of an alter ego
10 relationship also compel a finding that WFS is Bretthauer's alter ego. First, there was commingling
11 of funds given that Bretthauer and his roommates paid the mortgage on the Seminole Property,
12 which remained in Bretthauer's name even after the property was conveyed to WFS. (*Id.* at 54:22-
13 24, 100:23-101:1, 148:17-150:6.) Further, Bretthauer was unable to state whether the properties'
14 loans were paid from WFS's sole bank account. (*Id.* at 99:17-20, 113:14-20.)

15       Second, WFS was undercapitalized. It did not have an office, pay any employees (*id.* at
16 63:12-14, 89:5-17), or pay out any dividends (*id.* at 66:9-12, 67:8-11). Its only assets were two,
17 possibly three, properties; and Bretthauer testified that the Seminole and Blue Falls properties'
18 value were equal to the debts owed against them. (*Id.* at 61:17-62:7; Bretthauer Decl. (#65) at 2.)
19 After WFS sold the properties, "[t]here was no money left." (Bretthauer Dep. (#67) Ex. N at
20 135:15-24.)

21       Third, while there is no evidence that Bretthauer effected an unauthorized diversion of
22 WFS's funds, this does not weigh against an alter ego finding given that WFS did not produce any
23 income for Bretthauer. (*Id.* at 62:8-11.)

24       Fourth, Bretthauer treated WFS's assets as his own because he lived (and continues to lives)
25 on the Seminole Property, and there is no indication that he paid rent to WFS. (*Id.* at 83:19-84:25.)
26

7

1  Furthermore, the properties' loans and insurance remained in Bretthauer's name. (*Id.* at 100:23-
2  101:4, 101:24-102:21.)
3        Fifth, with regard to corporate formalities, while WFS held meetings, made resolutions,
4  issued stock, had bylaws, and had a bank account (*id.* at 63:22-65:18, 80:2-9, 113:14-16, 146:15-
5  19), it failed to file tax returns (*id.* at 65:20-22) and had no office or employees (*id.* at 63:12-14,
6  89:2-17).
7        In sum, the United States has shown as a matter of law that WFS was Bretthauer's alter ego.
8  Bretthauer has presented no evidence from which a reasonable jury could find otherwise.
9        **C. Validity of the Notices of Federal Tax Liens**
10        This court must also consider whether the United States may foreclose on its tax liens given
11  that Bretthauer's properties are now in the hands of Diane Watson's wholly owned corporation,
12  SBF. The starting point for this inquiry is 26 U.S.C. § 6323, which sets forth when liens against a
13  taxpayer's property remain valid even though the property has been purchased by another
14  individual. Subsection (a) announces the general rule that "[t]he lien imposed by section 6321 shall
15  not be valid as against any purchaser . . . until notice thereof which meets the requirements of
16  subsection (f) has been filed by the Secretary." The parties do not dispute that the lien notice meets
17  the requirements set forth in subsection (f). Rather, the parties differ on whether the liens may be
18  foreclosed upon even though the NFTLs against WFS were filed after it conveyed the properties to
19  the Michitarians.
20        The answer to this quandary is found in subsection (h)(6) of § 6323, which defines
21  "purchaser" as that term is used in subsection (a): "The term 'purchaser' means a person who, for
22  adequate and full consideration in money or money's worth, acquires an interest (other than a lien
23  or security interest) in property which is valid under local law against subsequent purchasers
24  without actual notice." Thus, the Michitarians would not be a purchaser, free from the tax liens,
25  unless (1) full consideration in money or money's worth was given for the properties, and (2) the
26

Michitarians' interest is valid under local law against subsequent purchasers without actual notice of their interest.

While the parties dispute whether full consideration was given for the properties, the court does not need to reach this issue because the Michitarian's interest in the properties was not valid against subsequent purchasers when the United States filed its NFTLs. Nevada has a race-notice recording act.[2] *Buhecker v. R.B. Petersen & Sons Const. Co.*, 929 P.2d 937, 939 (Nev. 1996). Thus, a transferee's interest in property is only valid against a subsequent bona fide purchaser if the transferee records its interest first.

In the present case, the conveyances to the Michitarians and Watson were not recorded until May 19 and 23 of 2006, respectively; and the conveyances to SBF were not recorded until September 18, 2006. Before all of these recordings, however, the United States filed its NFTLs on March 10, 2006. Thus, the Michitarians were not "purchasers" under § 6323(a) because they did not record their interest before United States filed NFTLs against WFS. SBF therefore took the properties subject to the tax liens.

### D. Motion for Sanctions

The United States' motion for sanctions (#68) asks this court to strike Defendants' Exhibits B, C, F, G because they were not timely produced in discovery. The United States also asks this court to strike portions of Bretthauer's declaration because it contains statements inconsistent with his deposition testimony. The court does not address these contentions because the allegedly offending materials were not considered in deciding the present motion for summary judgment. The United States motion for sanctions is therefore denied as moot.

///

---

[2]Nevada's recording act provides the following: "Every conveyance of real property within this State hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real property, or any portion thereof, where his own conveyance shall be first duly recorded." Nev. Rev. Stat. § 111.325.

9

## IV. Conclusion

The United States has shown its assessments against Bretthauer are entitled to a presumption of accuracy and therefore may be reduced to judgment. The United States has also shown as a matter of law that WFS is Bretthauer's alter ego and that SBF took the properties subject to the United States' tax liens. Summary judgment for the United States is therefore granted.

IT IS THEREFORE ORDERED that the United States' Motion for Summary Judgment (#49) is GRANTED.

IT IS FURTHER ORDERED that the United States' Motion for Sanctions (#68) is DENIED as moot.

IT IS FURTHER ORDERED that judgment is entered against Lloyd R. Bretthauer for his federal income tax liabilities in the amount of $1,251,833.44, as of February 27, 2008, plus interest pursuant to 26 U.S.C. §§ 6601, 6621, and 6622 and 28 U.S.C. § 1961(c) and other accruals allowed by law until the date of payment in full.

IT IS FURTHER ORDERED that judgment is entered against Lloyd R. Bretthauer for his federal employment tax liabilities in the amount of $295,272.75, as of February 27, 2008, plus interest pursuant to 26 U.S.C. §§ 6601, 6621, and 6622 and 28 U.S.C. § 1961(c) and other accruals allowed by law until the date of payment in full.

IT IS FURTHER ORDERED that judgment is entered against Lloyd R. Bretthauer for his federal unemployment tax liabilities in the amount of $47,625.35, as of February 27, 2008, plus interest pursuant to 26 U.S.C. §§ 6601, 6621, and 6622 and 28 U.S.C. § 1961(c) and other accruals allowed by law until the date of payment in full.

///
///
///

IT IS FURTHER ORDERED that the United States is granted ten days to file a proposed order of judicial sale.

IT IS SO ORDERED.

DATED this 12th day of September 2008.

LARRY R. HICKS
UNITED STATES DISTRICT JUDGE